IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KRIS RAMABADRAN | : | CIVIL ACTION |
| | : | |
| v. | : | 05-4570 |
| | : | |
| THE PRUDENTIAL INSURANCE COMPANY | : | |
| OF AMERICA | : | |

**JOYNER, J.**                                           **August 14, 2006**

**MEMORANDUM AND ORDER**

Via the motion now pending before this Court, Plaintiff seeks summary judgment. Also before this Court is Defendant's cross motion seeking summary judgment and dismissal of Plaintiff's claims. For the reasons set forth below, Plaintiff's motion is denied, and Defendant's motion is granted.

**I.   Background**[1]

Plaintiff filed the instant suit on September 29, 2005, to recover benefits allegedly due him under an insurance policy. Plaintiff, Kris Ramabadran, is employed by Johnson & Johnson full-time as an Assistant Director of Clinical Pharmacy. Through Plaintiff's employment, he was issued Group Policy G-42150, which provides Accidental Death and Dismemberment Coverage (the "Policy"). The Policy is funded and administered by Defendant, The Prudential Insurance Company of America ("Defendant" or "Prudential").

Plaintiff's wife, Rajalakshmi Ramabadran ("Mrs.

---

[1] All facts, unless otherwise noted, are taken from the Joint Stipulation of Facts signed and submitted by both parties.

Ramabadran"), died on March 24, 2004 as a result of a brainstem herniation due to subarachnoid hemorrhage.  Mrs. Ramabadran was erroneously given intravenous Heparin, a blood thinner, in place of a paralytic agent that was to have been administered prior to a procedure to implant a device to monitor Plaintiff's brain bleed.  (Admin. Record PRU 0079.)

On April 28, 2004, Prudential received a claim for Dependent Personal Accidental Death benefits under Group Policy G-42150 from Plaintiff for the death of his wife.[2]  On July 7, 2004, Prudential denied Plaintiff's claim on the basis that a loss is not covered by the Policy if it is the result – direct or indirect – of sickness or medical treatment for sickness, and Prudential believed that the claim fell within this exclusion.

The Policy provides, in relevant part, that

[b]enefits for accidental Loss are payable only if all of these conditions are met:

(1) The person sustains an accidental bodily Injury while a Covered Person.

(2) The Loss results directly from that Injury and from no other cause.

(3) The Loss is due to a Covered Accident.

(Admin. Record PRU 000104.)  Further, the Policy states that

[a] Loss is not covered if it results from . . .

(3) Sickness, whether the Loss results directly or indirectly from the Sickness.

(4) Medical or surgical treatment of Sickness, whether

---

[2]The Policy provided accidental death benefits in the amount of three times the insured's annual salary, or $366,000.00 in the case of Plaintiff's wife.

    the Loss results directly or indirectly from the
    treatment (except medical or surgical treatment
    necessitated solely due to the injury).

(Admin. Record PRU 000105.)

  The initial certificate of death listed the manner of death as "natural."  On November 8, 2004, Plaintiff appealed Prudential's initial decision to deny benefits.  In support of this appeal, Plaintiff submitted an amended certificate of death noting that the manner of death was "accident."  The cause of death was listed as cerebral aneurysm due to (or as a consequence of) subarachnoid hemorrhage due to (or as a consequence of) brainstem herniation.  (Admin. Record PRU 0044.)  Heparin toxicity was listed as a significant condition contributing to death.  (Id.)

  On December 20, 2004, Prudential upheld its decision to deny benefits because it determined that Mrs. Ramabadran's death was a result of (1) sickness (subarachnoid hemorrhage) and (2) a medical misadventure (erroneous injection of Heparin), and not exclusively from an "accidental injury" and no other cause.  On March 21, 2004, Plaintiff again appealed Defendant's denial of benefits.  On this appeal, Plaintiff contended that the administration of Heparin was not medical treatment for Mrs. Ramabadran's subarachnoid hemorrhage and was, in fact, contrary to medical treatment of Mrs. Ramabadran's sickness.  On April 5, 2004, Prudential again upheld its denial of benefits, stating that Mrs. Ramabadran's death resulted from complications from

"her sickness and treatment and not solely from an accidental injury."

## II.  Legal Standard for a Motion for Summary Judgment

In deciding a motion for summary judgment under Fed. R. Civ. P. 56(c), a court must determine "whether there is a genuine issue of material fact and, if not, whether the moving party is entitled to judgment as a matter of law." Medical Protective Co. v. Watkins, 198 F.3d 100, 103 (3d Cir. 1999) (citations omitted). Rule 56(c) provides that summary judgment is properly rendered:

> . . . if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Thus, summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-32 (1986).  An issue of material fact is said to be genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A party seeking summary judgment bears the initial burden of identifying portions of the record that demonstrate the absence of issues of material fact. Celotex, 477 U.S. at 323.  The party opposing a motion for summary judgment cannot rely upon the allegations of the pleadings, but instead must set forth specific

facts showing the existence of a genuine issue for trial.  Id. at 324; Fed. R. Civ. P. 56(e).

**III. Standard of Review**

The parties have stipulated that the Policy is an employee welfare benefit plan subject to the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 et seq. ("ERISA").  Thus, we treat Plaintiff's claim as seeking relief under 29 U.S.C. § 1132(a)(1)(b), which allows a beneficiary to sue for benefits due to him under the terms of the plan.

Under ERISA, a denial of benefits is reviewed de novo, unless the relevant policy gives the plan administrator discretionary authority to determine eligibility for benefits. Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989). Where such authority is given, the administrator's decision will be overturned where it is arbitrary and capricious.  Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagen of Am., Inc., 222 F.3d 123, 129 (3d Cir. 2000).  An administrator's decision is arbitrary and capricious where it is "'clearly not supported by the evidence in the record or the administrator has failed to comply with the procedures required by the plan.'" Id. (quoting Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40, 41 (3d cir. 1993)).

Where, however, a single entity both funds and administers a policy, a heightened form of the arbitrary and capricious standard applies.  Pinto v. Reliance Standard Life Ins. Co., 214

F.3d 377, 378 (3d Cir. 2000).  This heightened standard of review is based on a sliding scale approach so that the intensity of the scrutiny matches the degree of conflict of interest.  Id. at 379.  In determining the appropriate standard of review, courts look to factors such as the sophistication of the parties and any "suspicious events" or "procedural anomalies" during the claims process.  Id.; see also Stratton v. E.I. DuPont de Nemours & Co., 363 F.3d 250, 254 (3d Cir. 2004).

   Here, the Policy provides that

   [t]he Prudential Insurance Company of America as Claims
   Administrator has the sole discretion to interpret the
   terms of the Group Contract, to make factual findings,
   and to determine benefits payable.  The decision of the
   Claims Administrator shall not be overturned unless
   arbitrary and capricious.

(Joint Stip. of Facts ¶ 15.)  Prudential admits that it both administers and funds the Policy.  (Id.)  The parties have stipulated that a heightened arbitrary and capricious standard is applicable.  (Id. ¶ 16.)

   Prudential argues that there is no evidence of procedural bias or anomaly, and the lowest level of heightened scrutiny is, therefore, appropriate.  While it is not entirely clear which party bears the burden of showing the appropriateness of heightened scrutiny, we find no indication of the type of procedural irregularities and inequities found in Pinto and other such cases, and Plaintiff has alleged none.  See Pinto, 214 F.3d at 386 (distinguishing Kotrosits v. GATX Corp. Non-contributory Pension Plan for Salaried Employees, 970 F.2d 1165, 1173 (3d Cir.

1992)).  It appears that Prudential followed the procedures set out in the Policy, and was consistent in its findings and interpretations.  Thus, we will apply a low level of heightened scrutiny that gives the fiduciary decision "some deference, but [such] deference will be lessened to the degree necessary to neutralize any untoward influence resulting from the conflict." Stratton, 363 F.3d at 256 (quoting Doe v. Group Hospitalization & Med. Servs., 3 F.3d 80, 87 (4th Cir. 1993)).

**IV.  Discussion**

We consider both motions for summary judgment together because the parties disagree on the answers to the same three questions: (1) was the aneurysm[3] a "sickness" or an "injury"; (2) was the erroneous dose of Heparin "treatment" of the aneurysm; and (3) was death the result of an accidental bodily injury and no other cause?  We examine whether any genuine issue of material fact remains as to these inquiries.

   **A.   Was the aneurysm a "sickness" or an "injury"?**

The Policy clearly states that a loss resulting directly or indirectly from sickness or treatment for sickness is not eligible for benefits.  (See Admin. Record PRU 000105.)  The Policy defines sickness as "[a]ny disorder of the body or mind of a Covered Person, but not an Injury; pregnancy of a Covered Person, including abortion, miscarriage or childbirth."  (Admin.

---

[3]In referring to the aneurysm in this discussion, we include both the cerebral aneurysm and subarachnoid hemorrhage.

Record PRU 000121.)  The Policy defines an injury as "injury to the body of a Covered Person."  (Id.)

Defendant argues that it reasonably concluded, based on the information presented, that Mrs. Ramabadran's aneurysm was a sickness within the meaning of the Policy.  Plaintiff contends that an aneurysm is an injury.  We consider whether either of these arguments successfully shows that there is no genuine issue of material fact as to this question.

In support of his argument that an aneurysm is an injury under the Policy, Plaintiff asserts that we must view the term "in the broadest light most favorable to [Plaintiff]."  (Pl.'s Mem. at 9.)  Plaintiff relies on Gatti v. Hanover Ins. Co., 601 F. Supp. 210, 211 (E.D. Pa. 1985) for the proposition that an insurance policy is to be viewed in its entirety, and its terms given their ordinary and plain meaning.  (See Pl.'s Mem. at 6-7.) That same mandate requires that even in construing the language of the agreement in the light most favorable to a plaintiff, we must consider its other provisions.[4]  Plaintiff cannot, by focusing solely on the meaning of "injury," to the exclusion of all other provisions, show that no genuine issue of material fact exists as to whether Mrs. Ramabadran's aneurysm was an injury. Such an analysis makes the exclusionary provisions of the agreement meaningless.

---

[4]The agreement in Gatti was not analyzed under the ERISA framework.

Nor can Plaintiff show, merely by alleging ambiguity in a term of the Policy, that Defendant made its decision in a manner inconsistent with the Policy or the facts.  Plaintiff relies entirely on his allegations, and presents no evidence in support of his contention that an aneurysm must be an injury under the plan.  Such reliance is patently insufficient to support summary judgment to Plaintiff's benefit.  See supra Part II.

Defendant argues that Mrs. Ramabadran's aneurysm and resulting hemorrhage amount to a "sickness" under the Policy. Defendant submits that an aneurysm is a condition that generally occurs as a result of disease.[5]  (Def.'s Mem. at 9 (citing Medline Plus).)  Defendant also argues that Plaintiff has admitted that Mrs. Ramabadran suffered from a sickness.  Plaintiff's counsel, by way of a letter of March 21, 2005 addressed to the Director of Defendant's Group Life Claim Division, acknowledged the exclusion for treatment of sickness, but argued that the administration of Heparin was not "treatment" because it was "completely contrary to medical treatment of Mrs. Ramabadran's sickness."  (Admin. Record PRU 0032 (emphasis added).)  Dr. MacBride, who initially reviewed the medical records relating to Mrs. Ramabadran's death, likewise concluded that the aneurysm and hemorrhage were a

---

[5] We note that other courts have concluded that a subarachnoid aneurysm, unless caused by an accidental bodily injury (e.g. head trauma), is generally considered to result from some form of disease. Fruge v. First Continental Life and Accident Ins. Co., 430 So. 2d 1072, 1075 (La. App. 1983) (citations omitted).

sickness, not an injury.  (Admin. Record PRU 0055.)

Plaintiff presents no evidence in contradiction of this conclusion.  Plaintiff, having failed to directly respond to Defendant's motion, apparently relies on his argument that an aneurysm is an injury.  Even if Defendant, as Plaintiff argues, bears a burden to prove that an exclusion applies, Plaintiff must still point to some evidence in support of its claim.  (See supra Part II.)  Plaintiff has, therefore, failed to show that any genuine issue of material fact exists as to whether Mrs. Ramabadran's aneurysm is a "sickness" under the Policy.

**B.     Was the erroneous dose of Heparin "treatment" of the aneurysm?**

While the conclusion that no material question of fact remains as to whether the aneurysm was a sickness can, itself, sustain summary judgment,[6] we consider the other arguments relied upon by Plaintiff and rejected by Defendant in making the eligibility determination.  Plaintiff argues that providing an incorrect drug cannot be "treatment" of a sickness.  Specifically, Plaintiff alleges that the term "treatment of sickness" is ambiguous, and that any ambiguity must be resolved in his favor.

Even assuming that this language is ambiguous, in an ERISA

---

[6]The Policy provides that any loss resulting directly or indirectly from sickness is excluded.  Plaintiff has not argued, nor do we believe he could credibly argue, that, if the aneurysm is a sickness, that Mrs. Ramabadran's death resulted therefrom, at least indirectly.

analysis, ambiguities are not automatically resolved in a plaintiff's favor.  Rather, "[i]f the reviewing court determines the terms of a plan document are ambiguous, it must take the additional step and analyze whether the plan administrator's interpretation of the document is reasonable." Bill Gray Enters. v. Gourley, 248 F.3d 206, 218 (3d Cir. 2001) (citing Spacek v. Maritime Ass'n ILA Pension Plan, 134 F.3d 283, 292 (5th Cir. 1998)).  Thus, the question before us is whether Defendant's conclusion that "treatment of sickness" includes improper or mistaken treatment is reasonable.[7]

Defendant argues that while Pennsylvania courts have not addressed whether medical mistakes and malpractice can be included in "treatment," other courts have so found.  Numerous courts have considered the question of whether similar clauses exclude coverage for death caused by medical mistakes in the course of treatment for a condition that would not otherwise give rise to an eligible loss.  See Whetsell v. The Mutual Life Ins. Co. of NY, 669 F.2d 955 (4th Cir. 1982); Swisher-Sherman v. Provident Life & Accident Ins. Co., 1994 U.S. App. LEXIS 28768 (6th Cir. 1994); Reid v. Aetna Life Ins. Co., 440 F. Supp. 1182 (S.D. Ill. 1977), aff'd 588 F.2d 835 (7th Cir. 1978).  While we need not determine whether these courts were correct, we cannot conclude that Defendant's decision is unreasonable in light of

---

[7]We need not determine whether the language is actually ambiguous.

the varied authority supporting this decision.  Plaintiff offers no argument or authority that this interpretation is unreasonable, but instead relies on the broad assumption that the terms of the contract must be broadly construed in his favor.  In the absence of some evidence or authority to the contrary, we can adduce no genuine issue of material fact as to whether Defendant could reasonably interpret "treatment of sickness" to include medical mishaps.

    **C.**    **Was death the result of an accidental bodily injury and no other cause?**

To be covered by the Policy, a loss must be the result of an accidental bodily injury and no other cause.  Plaintiff argues that the medical mistake in administering Heparin was a separate, intervening accidental bodily injury.  Plaintiff relies on <u>Whetsell</u>'s definition of accident.  (Pl.'s Mem. at 7.)  Even if the medical mishap can be considered an accidental bodily injury, Plaintiff must still show that the loss was the result of such injury and no other cause.  (<u>See</u> Admin. Record PRU 000104.)

The death certificate as the stipulated facts, show that there is no genuine issue of material fact as to whether cerebral aneurysm and subarachnoid hemorrhage were among the causes of Mrs. Ramabadran's death.  (Admin. Record PRU 0044; Joint Stip. of Facts ¶ 3.)  Furthermore, to the extent that Plaintiff argues that the medical mishap creates a separate loss, the same cases including medical mistakes in "treatment" also reject the

contention that a medical mistake for an underlying ineligible condition creates a new injury.  See Whetsell, 669 F.2d at 956; Reid, 440 F. Supp. at 1183; Swisher-Sherman, 1994 U.S. App. LEXIS 28768.  Thus, Plaintiff cannot show that Mrs. Ramabadran's death resulted from accidental injury and no other cause.

    For the reasons set forth above, Plaintiff's motion for summary judgment is denied, and Defendant's motion for summary judgment is granted.  An appropriate order follows.

```
            IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KRIS RAMABADRAN                   :    CIVIL ACTION
                                  :
     v.                           :    05-4570
                                  :
THE PRUDENTIAL INSURANCE COMPANY  :
OF AMERICA                        :
```

### ORDER

AND NOW, this 14th day of August, 2006, upon consideration of Plaintiff's Motion for Summary Judgment (Doc No. 13), and Defendant's response thereto (Doc. No. 17), Defendant's Cross Motion for Summary Judgment (Doc. Nos. 14, 15), and the Statement of Stipulated Facts in Support of Cross Motions for Summary Judgment (Doc. No. 13), it is hereby ORDERED that Plaintiff's motion is DENIED and Defendant's motion is GRANTED.

BY THE COURT:

s/J. Curtis Joyner
J. CURTIS JOYNER, J.